FILED
SEP 23 2016
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 3:12CR77–HEH |
| ) | |
| ONESIMO MARCELINO, ) | |
| ) | |
| Petitioner. ) | |

## MEMORANDUM OPINION
(Referring Claim One for an Evidentiary Hearing)

Onesimo Marcelino, a federal inmate proceeding *pro se*, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 161).[1] Marcelino contends that he received ineffective assistance of counsel[2] in conjunction with his sentencing. Specifically, Marcelino demands relief because:

> Claim One:   Counsel rendered ineffective assistance post-plea by "specifically instruct[ing Marcelino] to remain silen[t]" with respect to the extent of his criminal activity. Because Marcelino followed this advice, the Court denied him a reduction for acceptance of responsibility at sentencing. (Mem. Supp. § 2255 Mot. 2–3, ECF No. 162.)

The Government has responded, asserting that Marcelino's claim lacks merit. (ECF No. 171.) For the reasons set forth below, the Court will refer this matter to the Magistrate Judge to conduct an evidentiary hearing on Claim One.

---

[1] The Court employs the pagination assigned to Marcelino's submissions by the CM/ECF docketing system. The Court corrects the capitalization in quotations from Marcelino's submissions.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

## I. PROCEDURAL HISTORY

On April 18, 2012, a Criminal Complaint was filed, charging Marcelino with conspiracy to receive and possess contraband cigarettes, in violation of 18 U.S.C. §§ 371 & 2342. (Criminal Compl. 1, ECF No. 4.) On May 2, 2012, a grand jury charged Marcelino with conspiracy to ship, transport, receive, possess, sell, distribute, and purchase contraband cigarettes, in violation of 18 U.S.C. §§ 371 & 2342 (Count Five), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Eleven). (Indictment 4–13, 14–17, ECF No. 19.) On June 25, 2012, Marcelino pled guilty without a written plea agreement to Counts Five and Eleven. (June 25, 2012 Tr. 2–3.) On October 1, 2012, the Court entered judgment against Marcelino and sentenced him to 132 months of imprisonment. (J. 2, ECF No. 98.)[3] Counsel Vaughan Jones represented Marcelino throughout these proceedings.

On appeal to the United States Court of Appeals for the Fourth Circuit, Marcelino argued that "his conviction on the money laundering count 'merged' with his conviction for contraband cigarettes . . . such that the 132-month sentence imposed on the former count was improper." *United States v. Marcelino*, 537 F. App'x 217, 219 (4th Cir. 2013). Marcelino also argued "that the district court erred in denying his objections seeking acceptance of responsibility," *id.*, and "contest[ed] the enhancement he received for his leadership role." *Id.* The Fourth Circuit concluded that Marcelino's merger argument was waived because "[b]y pleading guilty . . . Marcelino admitted that he engaged in

---

[3] On November 1, 2012, the Court entered an Amended Judgment to correct the total amount of the special assessment imposed against Marcelino. (Am. J. 1, ECF No. 113.)

2

conduct that satisfied the elements for convictions under both the contraband cigarettes count and the money laundering count." *Id.* The Fourth Circuit also concluded that this Court "did not clearly err when it denied both of Marcelino's objections at sentencing." *Id.* at 220. The United States Supreme Court denied Marcelino's petition for a writ of certiorari. *Marcelino v. United States*, 134 S. Ct. 968 (2014).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of *Strickland* to require the convicted defendant to "show that there is a reasonable

3

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Of course, in conducting the foregoing inquiry, the representations of the convicted defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). In light of the strong presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). Thus, the Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22. No circumstances exist here that would lead the Court to consider Marcelino's prior sworn statements as other than truthful.

In Claim One, Marcelino contends that counsel rendered ineffective assistance post-plea by "specifically instruct[ing Marcelino] to remain silen[t]" with respect to the extent of his criminal activity. (Mem. Supp. § 2255 Mot. 2.) According to Marcelino, counsel "advised [him] to plead guilty with an assurance that he would receive points for

4

acceptance of responsibility." (*Id.* at 2.) Marcelino claims that counsel told him "that if he pleaded the Court would grant acceptance of responsibility but that the Government controlled the third point." (*Id.* at 14.) Marcelino told counsel "that he would accept responsibility for his involvement in the offense." (*Id.* at 13.) Counsel agreed "and instructed Marcelino not to detail the facts of the case to the probation department." (*Id.*) Marcelino claims that "[a]s [he] understood the communications with [counsel] he had done exactly as his attorney had instructed." (*Id.*) Marcelino contends that because he followed counsel's advice, the Court denied him a reduction for acceptance of responsibility at sentencing. (*Id.* at 3.)

During Marcelino's Rule 11 proceedings, Marcelino indicated that he understood that the Court would consider "a whole set of factors" under the Sentencing Guidelines, "includ[ing] information about acceptance of responsibility, which the government indicated there may be a dispute about here." (June 25, 2012 Tr. 12, ECF No. 121.) After Marcelino entered his pleas of guilty to Counts Five and Eleven (June 25, 2012 Tr. 15), the AUSA provided a basis in fact for Marcelino's pleas. (June 25, 2012 Tr. 47–56.) Notably, the AUSA indicated that:

> Your Honor, had this matter gone to trial, the evidence would have dealt first with the cigarette taxing scheme. The Commonwealth of Virginia, the State of New York, and the city of New York all require that cigarettes that are trafficked and transported through those jurisdictions have a tax that's paid on them. And the way that tax is paid is by having a stamp affixed to each pack of cigarettes. If there's no stamp on the cigarettes, there's no tax paid. The one exception to this is there is carved out in the statute certain types of individuals who are permitted to transport and distribute the cigarettes without the stamps. But the evidence would

have been that none of the--neither the defendant nor any of the other members of the conspiracy fell within any of those carved out groups.

In addition, Your Honor, the evidence would have been that well before this conspiracy began, the Bureau of Alcohol, Tobacco, Firearms and Explosives was engaged in an undercover operation selling untaxed contraband cigarettes out of a warehouse in Ashland, Virginia. They would sell them in master cases. And a master case, each master case contains 60 cartons of cigarettes, each carton of cigarettes contains 200 cigarettes, for a total in a master case of 12,000 cigarettes. The significance of this is that the statute prohibits the trafficking in contraband cigarettes. And it defines contraband cigarettes as in excess of 10,000. So each master case itself is prohibited under the statute.

In addition, each one of these master cases that was sold by the undercover agent in this conspiracy, and at all, were untaxed illegal contraband cigarettes. Now, one of the things that the ATF agent did was they would put into the boxes, the master cases, a business card that had their information and their calling number on it. And the purpose of this was to see if other individuals out there would contact them. And sure enough, that's how this part of the conspiracy began.

The evidence would have been that prior to June of 2010, the defendant, Mr. Marcelino, was already a significant trafficker in contraband cigarettes. The evidence would have been that he was obtaining his cigarettes at the time through Mr. Ayachi and Mr. Labidi, who are both codefendants out of North Carolina. And also at least through Mr. Ovalles, the defendant's also codefendant and cousin. And we know that because Mr. Ovalles purchased contraband cigarettes in March of 2010 from an undercover agent in New York. And we also know from all of the codefendants that Mr. Ovalles was the driver for the defendant.

The evidence would also have been that in the spring of 2010, Mr. Marcelino came into possession of one of those business cards that had the undercover—the Virginia undercover information on it. And first he sent his driver, Mr. Ovalles, down here to check it out. And that happened on May 26th of 2010.

Mr. Ovalles, using the name Jose, although his real name is Joe, came down and met with the agents. Specifically said that he wanted to talk to them about the possibility of beginning a relationship where they would purchase the cigarettes from the agents the agents would provide them.

. . . .

On June 8th of 2010, Mr. Marcelino sent down Mr. Labidi to also have a conversation with the undercover agents. And that occurred at the undercover location as well. And again, it was to find out how this

operation worked. To make sure that--that this was a safe operation because, again, there were discussions that this was illegal. And there were specific conversations about--to find out whether or not the undercover agents were in fact undercover agents, and whether this was a safe operation.

Obviously, Mr. Marcelino and the other defendants were convinced that this was a safe operation because beginning on June 23rd of 2010, and continuing until October 27th of 2011, there were numerous transactions where either Mr. Labidi or Mr. Ayachi, or sometimes both of them, and on two occasions Mr. Ovalles would purchase multiple quantities of master cases of contraband cigarettes from the undercover agents. The total number of master cases that were obtained for Mr. Marcelino was well in excess of 1,700.

We know that on November 30th of 2010, Mr. Ovalles came down and did an undercover deal of master cases. At that point in time, there was a conversation about other people involved in this. And there was a conversation about Mr. Labidi who was--the way it worked is Mr. Ayachi and Mr. Labidi would buy cigarettes. They would sell them to Mr. Marcelino. He and Mr. Labidi or Mr. Ovalles would transport the cigarettes from Virginia to New York. And during the conversation of November 30th of 2010, Mr. Ovalles stated that all of the cigarettes that were being purchased by him and Mr. Labidi were for his cousin. And that was later determined to be the defendant, Mr. Marcelino.

On December 14th of 2010, there were also undercover conversations involving both Mr. Labidi and Mr. Ayachi. At that point in time, they talked about their partners in this whole operation as Jose, who is Joe Ovalles. And they said that Jose was the driver for their contact, who was William. And William was the one that they were providing the cigarettes to, and that those cigarettes were then sold in New York. Subsequent to that, it was determined that the defendant is the individual identified as William.

And what Mr. Ayachi, Mr. Labidi, and Mr. Ovalles have indicated either through conversations to the undercover agents while it was still in an undercover capacity, or subsequent to that, was that Mr. Labidi and Mr. Ayachi would buy cigarettes. They would provide some of the money on their own. Mr. Marcelino would either bring down or send down the rest of the money. They would buy the cigarettes that had been ordered by Mr. Marcelino, and then those cigarettes would go to a storage shed in Virginia. And some of them would be sent up to New York immediately, some of them would be taken up at a later point in time sometimes by Mr. Labidi, sometimes by Mr. Ovalles. And then Mr. Marcelino's--Mr. Marcelino would then take those cigarettes, still no stamps on them, still no taxes paid

on them, and sell them in New York at a great profit because they didn't have to pay the Virginia and the New York taxes.

(June 25, 2012 Tr. 15–20.) When asked by the Magistrate Judge, Marcelino confirmed that the basis in fact provided by the AUSA was true and that he was guilty of that conduct. (June 25, 2012 Tr. 25–26.)

Prior to sentencing, the Probation Officer determined that Marcelino's relevant conduct involved "the trafficking and/or attempted trafficking of 1,859.5 master cases, or 111,570 cartons of contraband, untaxed cigarettes." (Pre-Sentence Investigation Report ("PSR") ¶ 100, ECF No. 65.) The total tax loss attributable to Marcelino was "$5,084,130.00, of which $4,753,830.00 [was] owed to the State of New York and $330,300.00 [was] owed to the Commonwealth of Virginia." (*Id.* ¶ 101.) With respect to acceptance of responsibility, the Probation Officer wrote:

> Mr. Marcelino declined to make any statements regarding his role in the instant offenses of conviction at the time he was interviewed by the Probation Officer. However, the defendant and his attorney advised that they would prepare and submit a written statement regarding the defendant's role and acceptance of responsibility prior to sentencing. As of the writing of this report, no such statement has been received. Accordingly, the defendant is not being awarded a two (2) level reduction in his offense level, in accordance with U.S.S.G. § 3E1.1(a).
> The Government has advised that they will not be filing a motion for a one-level reduction in the defendant's offense level for acceptance of responsibility, as the defendant has yet to acknowledge his entire role in the conspiracy for which he pled guilty. Therefore, the defendant's offense level will not be reduced by one-level in accordance with U.S.S.G. § 3E1.1(b).

(*Id.* ¶¶ 103–104 (paragraph numbers omitted).)

Four days before sentencing, Marcelino's counsel filed a sentencing position statement. (ECF No. 77.) In this statement, counsel argued that Marcelino should receive a three-level reduction for acceptance of responsibility. (*Id.* at 3–9.) Counsel attached a letter signed by Marcelino. (ECF No. 77–2.) In this letter, Marcelino denied being a part of a "criminal organization or group" (*id.* at 1), denied that Labidi and Ayachi worked for him (*id.*), and stated that he had only purchased a total of eighty cases from Ayachi during the course of the conspiracy (*id.* at 2). Marcelino also indicated that it was Labidi, not himself, who located the new source of supply, which turned out to be operated by undercover agents. (*Id.* at 1.)

At sentencing, counsel for Marcelino argued that Marcelino should receive the three-level reduction for acceptance of responsibility. (Sept. 28, 2012 Tr. 4–12, ECF No. 119.)[4] The Court, however, agreed with the Probation Officer and the Government that Marcelino should not receive any reduction for acceptance of responsibility. (Sept. 28, 2012 Tr. 38.) The Court "believe[d] that [Marcelino] ha[d] falsely denied the extent of his involvement [and] falsely denied the quantities to which he is responsible for." (Sept. 28, 2012 Tr. 38.)

Section 3E1.1 of the United States Sentencing Guidelines provides:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is

---

[4] The transcript of the September 28, 2012 sentencing hearing mistakenly states that the hearing occurred on September 28, 2010.

9

> level **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by **1** additional level.

*United States Sentencing Guidelines Manual* § 3E.1.1 (U.S. Sentencing Comm'n 2011).

With respect to subsection (a),

> [e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct) (*see* Application Note 1(A)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a). However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to adjustment under this section as a matter of right.

*Id.* cmt. n.3 (emphasis omitted). "[T]o be eligible for this downward departure, 'the defendant must prove by a preponderance of the evidence that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct.'" *United States v. McKenzie-Gude*, 671 F.3d 452, 463 (4th Cir. 2011) (quoting *United States v. Nale*, 101 F.3d 1000, 1005 (4th Cir. 1996)).

Here, Marcelino claims that, but for counsel's deficient advice, he would have fully accepted responsibility for his role in the offense by providing specific details to the Probation Officer so that he could receive a reduction for acceptance of responsibility. In its Response, the Government failed to produce an affidavit or sworn declaration from Marcelino's counsel with respect to Marcelino's claim.

10

Claim One raises factual issues that cannot be resolved on the current record, as a "determination that counsel's advice . . . was a strategic one is a factual determination requiring a credibility determination, or at least the receipt of evidence outside of the present record." *United States v. Dickerson*, 546 F. App'x 211, 214 (4th Cir. 2013) (citation omitted); *see also United States v. Robertson*, 219 F. App'x 286, 286 (4th Cir. 2007) (citations omitted) (noting that an evidentiary hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to solve this issue"). The Court simply lacks enough information to determine whether Jones reasonably advised Marcelino about acceptance of responsibility and what Marcelino needed to do in order to be eligible for that reduction. Accordingly, the Court is unable, at this juncture, to conclusively find that Marcelino is entitled to no relief. *See* 28 U.S.C. § 2255(b) (stating that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto"). Therefore, the Court will refer this matter to the Magistrate Judge for the purpose of conducting an evidentiary hearing on Claim One.

### III. CONCLUSION

For the foregoing reasons, the Court will refer this matter to the Honorable Roderick C. Young, United States Magistrate Judge, to conduct an evidentiary hearing on

11

Claim One. The Clerk will be directed to appoint counsel to represent Marcelino in further proceedings.

An appropriate Order shall issue.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Sept. 22, 2016
Richmond, Virginia

12